```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF TENNESSEE
                      NASHVILLE DIVISION
```

LUBBER, INC.,                    )
                                 )
    Plaintiff             )
    Counter-Defendant     )
                                 )  Case No. 3:11-0042
v.                               )  Judge Sharp/Brown
                                 )  **Jury Demand**
OPTARI LLC and JEREMIAH PENT,    )
                                 )
    Defendants             )
    Counterclaimants       )

### **O R D E R**

The Defendant opened this latest volley of discovery disputes on February 3, 2012, with Docket Entry 103--a motion for a protective order. The motion requested a protective order that they not be obligated to conduct an electronic search for electronically-stored information on Plaintiff's claims other than from the period of October 4, 2010, until February 8, 2011, or in the alternative, that the Plaintiff be required to pay for all of the Defendants' costs in connection with such discovery. They also requested attorneys' fees for having to file this motion pursuant to Fed. R. Civ. P. 37.

The Plaintiff then filed a motion to compel discovery for some nine different topics (Docket Entry 117).[1]

These two motions and the documents filed with them have now taken us from Docket Entries 103 on February 3, 2012, to Docket

---

[1] These nine topics are not numbered. It would have been very helpful to the Court and to others having need to read this material if these nine bullet-points been numbered or lettered.

Entry 151 on March 7, 2012. If this material were printed out it would number in the hundreds of pages and be several inches thick. The Magistrate Judge has spent over 20 hours just attempting to read through this material and to decipher the competing arguments.

Quite frankly, the Magistrate Judge believes that there is a great deal of tit-for-tat going on in this case. It is clear that the parties themselves do not like each other and, unfortunately, the Magistrate Judge has come to the conclusion that the attorneys, rather than monitoring and moderating this process are, in some cases, throwing gasoline on the fire. To the extent that there are any requests for attorneys' fees for filing either of these motions, they are **DENIED**. The Magistrate Judge believes that despite his concern previously expressed about harsh language (Docket Entries 63 and 84), the parties have shown little effort to resolve this matter on their own.

The Magistrate Judge will **GRANT** in part and **DENY** in part these motions as set out below.

The present discovery cutoff is March 15, 2012. As the Magistrate Judge advised the parties during a 1½ hour telephone conference, discovery and expert deadlines were extended for 28 days. That deadline will be extended further as stated later in this order. Although the Defendants continue to make statements that the Plaintiff's claims have no basis and therefore they need not respond to discovery, they have not availed themselves of the

opportunity to file dispositive motions on those issues.  If the Plaintiff has withdrawn certain claims or has admitted there is no basis in fact for them, then the best remedy is to file dispositive motions on the issues forthwith.[2]

The Magistrate Judge continues to be amazed at the amount of money that both sides are spending on a case in which neither the claims nor counterclaims are likely to be worth the legal fees.

The parties reached a settlement on August 30, 2010 (August 30th), which has been filed in several places and referenced innumerable times.  The Magistrate Judge will refer to it as Docket Entry 139-1.  It is clear to the Magistrate Judge that this document was intended to be all-inclusive and to put a guillotine on all claims up to August 30th. Language such as "from the beginning of time" certainly seems to be all-encompassing, if somewhat meaningless. However, undoubtedly the term is in someone's word processor and rather than using a real date they use this unfortunate boilerplate.

The Plaintiff in general attempts to attack this release, and the Defendants attempt to use it to cut off all discovery prior to August 30th.  Unfortunately for the Defendants' position, it appears from deposition excerpts (Docket Entries 148, 149, 150)

---

[2]*See* Docket Entry 137 which lists various claims the Defendants claim have been dropped or have no basis in law or fact.  In that same document they state they have elected not to pursue claims for interference with respect to Scott Brothers, Ltd. and Ommu Dawoud.  There is no formal filing of a dismissal of any claims by the parties.

that Defendants are more happy to ask questions dealing with matters before the August 30th date when they find it to their benefit.

In ruling on this matter, the Magistrate Judge is fully aware that relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C)(iii) gives the Court a great deal of latitude in controlling discovery which sometimes tends to run amok.

One of the concerns of discovery is the allocation of costs. In general, costs are borne by the producing party. While this works in the vast majority of cases, the requesting parties have little incentive not to ask for everything possible. This leads to interrogatories and requests for production that are expressed in the broadest possible terms.

It is the Magistrate Judge's experience and the view of a number of economists who have studied this issue that where the requesting party bears a part of the cost of producing what they request, the amount of material requested drops significantly. When a party has to contemplate whether the last possible bit of information will cost them more than it is worth, they quit asking for items of marginal relevance. As long as requesting the last bit of information costs them nothing they have little, if any, incentive not to request it. Even if they choose never to look at it, they have put the opposing party to the cost of production. In

some cases discovery becomes a tool with which to bludgeon the other side into submission. The Magistrate Judge believes that both sides are doing that in this case.

In Docket Entry 103, the Defendants have moved for a protective order to prevent a search for electronically-stored information (ESI) before October 4, 2010, or after February 8, 2011.

The October 4, 2010 date is significant because at that point Mr. Blazzell, as President and apparently sole shareholder of Lubber at the time, filed bankruptcy. He also testified that in this case Lubber was not seeking compensation for conduct occurring before October 4, 2010, the date of his personal bankruptcy filing. The parties have spent a good deal of time arguing over what Mr. Blazzell meant by this. However the Magistrate Judge believes that this testimony is what it is and that it is certainly possible the Plaintiff in this matter may be bound by that statement.

The Plaintiff makes an argument that they should be entitled to discovery on this issue and that by denying discovery the Magistrate Judge is, in effect, deciding an issue which must be decided by the District Judge.

This argument is not totally without merit and the precise issue of estoppel is one that must be decided by summary judgment or trial.

As the Plaintiff pointed out, the Defendants have made some inquiries about matters prior to that date. The settlement

agreement had a cut off date of August 30th. The Defendants point out that as part of their mandatory disclosures under Rule 26, Plaintiff has not identified specific damages for this period. It appears that a number of search terms have been agreed on and Defendants produced a number of documents for the period they agree is relevant. Defendants contend that costs could run at least $10,000 and produce gigabytes of ESI material for this added search.

In an effort to cut this Gordian knot, the Magistrate Judge will **DENY** the protective order with the provision that the Defendants will bear one-half of the expenses and the Plaintiff will bear one-half of the expenses of the materials not already produced.

Turning now to Docket Entry 117, the Plaintiff's motion to compel, the Magistrate Judge will attempt to cut this knot as well. The first amended complaint (Docket Entry 94), which is operative in this case, is some 28 pages long and has an additional 18 exhibits attached to the complaint for a grand total of 79 pages.[3] The answer and counterclaim (Docket Entry 98) is 47 pages long with 13 exhibits for a grand total of 65 pages. Exhibit A (Docket Entry 117-1) sets forth the specific interrogatory and document request in question.

---

[3] Unfortunately, despite the requirements of ECF, these exhibits to the complaint are not specifically described, thus requiring a bit of an Easter egg hunt to find a particular exhibit without going back and referring to the complaint itself.

6

Any information after August 30th is sufficiently relevant and the Defendants should answer.

The Magistrate Judge is aware of Defendants' argument that Mr. Blazzell's statement in the bankruptcy hearing cut off any claims by Lubber prior to October 4, 2010. However, for the purpose of discovery, the Magistrate Judge believes that the Plaintiff has made a sufficient showing of relevancy at this point. The Defendants have not sought summary judgment on the bankruptcy issue. The trustee apparently was aware of this litigation, chose not to intervene, and, for whatever reason, closed the case. As a practical matter the Magistrate Judge wonders why the Defendants did not take the opportunity to buy the company's stock from the trustee. Apparently, since the trustee valued it as having minimal value it could have been purchased literally at a bankruptcy sale price and would have effectively ended the litigation by Lubber, Inc. Having failed to do so they are now locked into this litigation.

Judge Sharp has dismissed Lubber's Claim III for rescinding the separation agreement as well as Claim XII for an accounting, except to the extent it involves material necessary for tax returns. However, it appears that other claims involving matters occurring before the separation agreement was signed remain in litigation--including breach of the agreement--and there have been no motions for summary judgment on those claims.

7

To the extent any of these documents relate to material necessary for tax returns, preparation, or to answer inquiries from the Internal Revenue Service, the Defendants are directed to provide that information to the extent they have not done so.

A number of requests are for information which would be relevant to punitive damages. However, at this point liability has not been established. Insofar as the documents relate to information relevant to punitive damages, the Defendants should have that information available for submission to the Plaintiff at such time there is a determination that punitive damages are warranted. The Magistrate Judge will recommend to Judge Sharp he consider bifurcation of punitive damages.

An additional issue that has complicated the discovery issues is the theory that some of this information is relevant to the credibility of witnesses on both sides for trial. Credibility is an issue in the case and discovery concerning that is relevant. Accordingly, requests for documents which the Plaintiff can identify as related to credibility are relevant and should be disclosed.

Because of the separation agreement, which has not been rescinded, the Magistrate Judge does have concerns that the Plaintiff will be able to win on these issues and, therefore, the costs to the Defendants in producing this material is a consideration. If the separation agreement is valid, the Plaintiff may well be responsible for costs to the Defendant in seeking this

information. The Magistrate Judge believes that the Plaintiff, in order to secure this information, should post a bond in a reasonable amount, which the Magistrate Judge believes would be $10,000, for costs to the Defendant of producing the information they seek prior to August 30th. The claims, counterclaims, defenses, and credibility issues do open up the need for discovery prior to August 30th.

As an example, in their counterclaim (Docket Entry 98, p. 29), the Defendants allege that the Plaintiff has narrowed the campaign to disparage the Defendants and interfere with their relationship with its customers by making various false statements about the Defendants. Paragraphs 31 through 35 of Docket Entry 98 contain additional charges against Lubber where Lubber's post-August 30th conduct is alleged to involve activities that occurred pre-August 30th. Lubber contends that it needs to have discovery of pre-August 30 matters in order to show that its post-August 30th statements are true. The Magistrate Judge concludes that Defendants, by making a counterclaim about this matters have, by implication, opened up pre-August 30th discovery to the extent the Plaintiff is entitled to attempt to show truth as defense.

Under these circumstances, the Magistrate Judge cannot conclude that the requested material could not reasonably lead to admissible evidence. However, the issue is so close that the Magistrate Judge believes that a bond is necessary to protect the Defendants from producing material which, in the end, may be

protected under the separation agreement.  Given Mr. Blazzell's bankruptcy and the apparent lack of substantial value in the company itself, the Magistrate Judge believes that a bond is an appropriate protection in this matter. This bond will allow the Plaintiff to secure this information if they wish to pursue this discovery, while offering some protection to the Defendants should they prevail.

To the extent the motion (Docket Entry 117) requests attorneys' fees for preparing it, they are **DENIED**.  Although the Magistrate Judge is ruling against the Defendants, their position was not unreasonable.

The Magistrate Judge extended the discovery and expert discovery deadlines by **28 days** during the telephone conference.  In view of this ruling, it does not appear discovery can be accomplished within that period of time.  Discovery will remain open until **May 1, 2012**.  The Plaintiff and Counter-Defendant shall make their Rule 26 expert witness disclosures by **May 31, 2012**.  The Defendants and Counterclaimants shall provide their Rule 26 expert disclosures by **July 2, 2012**, and all depositions of expert witnesses shall be completed by **August 10, 2012**.  The deadline for filing dispositive motions is **September 10, 2012**.  Responses will be due **28 days** thereafter and replies, if any, limited to **five pages**, will be filed **14 days** after any response.  If dispositive

motions are filed early the response and reply dates are moved up accordingly.

After consulting with Judge Sharp's chambers this matter is set for a trial,[4] which the parties estimate will take at least four days, on February 12, 2013, at 9:00 a.m. Judge Sharp will conduct the final pretrial conference on January 25, 2013, at 1:30 p.m. Judge Sharp will issue a separate order covering his requirements for the final pretrial conference and the trial.

The parties have indicated that they felt alternative dispute resolution might be considered after additional discovery. Given the history of this case where the parties are litigating everything to the nth degree, the Magistrate Judge has checked with Magistrate Judge Bryant and he is willing to conduct a settlement conference with the parties. The parties are directed to either schedule mediation with a private mediator or contact Judge Bryant's chambers to schedule mediation by **April 2, 2012**. Much like Dickens' Bleak House the loser in this case could be bankrupt, and the winner may well have a judgment, which will be suitable for framing, but not convertible to cash.

The Magistrate Judge urges the parties in the strongest terms to settle this case if at all possible.

It is so **ORDERED.**

---

[4]Although the Plaintiff has requested a jury trial in this matter, the Defendants claim that a jury trial was waived in the separation agreement. If the Defendants wish to pursue this issue they should file an appropriate motion for a nonjury trial which would be a decision for the District Judge.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge