# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

LUBBER, INC.                )
                                  )
         Plaintiff,       )
                                  )
     v.                    )     **Case No. 3:11-0042**
                                  )     **Judge Sharp**
OPTARI LLC and JEREMIAH PENT,  )
                                  )
         Defendants.     )

## <u>MEMORANDUM</u>

In this case, which the Court characterized in an October 6, 2011, ruling as being "about a business deal between neighbors gone bad and what in hindsight was trouble waiting to happen" (Docket No. 92 at 1), the parties have filed cross-motions for summary judgment. Plaintiff Lubber, Inc., takes the overall position that "Defendants should have stopped while they were ahead" (Docket No. 204 at 1), and seeks summary judgment on its requests for declaratory judgment, and its claims for violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), common-law unfair competition and misappropriation, trademark and trade-dress infringement, and violation of the Tennessee Consumer Protection Act ( "TCPA"), Tenn. Code Ann. § 47-18-101, *et seq*. Defendants Optari LLC and Jeremiah Pent, insisting that "Plaintiff brought this lawsuit hoping to pursue claims it had released and get a better deal" (Docket No. 189 at 1) have moved for summary judgment on all of Plaintiff's claims. For the most part, the cross-motions for summary judgment will be denied, as there are plenty of questions of fact as to who did what when and/or whether those actions violated the Separation Agreement between the parties.

# I. <u>DISCUSSION</u>

After Defendant Jeremiah Pent moved in next door to Dennis Brazzell ("Brazzell"), the founder of Lubber, Pent began marketing and selling rubber tote bags ("LubberTotes") that Brazzell had invented and federally registered, and charms ("LUBBS") that Brazzell's wife Suzanne had registered with the United States Patent and Trademark Office. Pent assumed a managerial role in connection with Lubber's marketing and sales and ultimately received 49% of Lubber's stock. He also entered into an exclusive licensing agreement with Brazzell that allowed Pent to market LubberTotes. According to Plaintiff, Pent quickly set about to misappropriate the entire Lubber operation, and threatened to take Lubber's customers and sell competing products under the name Optari.

Regardless of whether Pent's intentions were as devious as portrayed by Plaintiff, a deep schism developed between the parties and they sought to rectify it by entering into a "Separation, Redemption and General Release Agreement" which indicated that "Pent and Brazzell desire to terminate Pent's association with Lubber, including the licensing agreement, and desire that Lubber redeem Pent's Forty-Nine Percent (49%) interest in Lubber" and that "the Parties desire to terminate their relationships in the manner specified herein and wish to resolve amicably any and all outstanding differences between them." (Docket No. 1-3 at 1). Under the Separation Agreement, the licensing agreement was terminated, Pent's stock in Lubber was redeemed, Lubber was paid $100,000, Defendants secured the right to continue selling similar products to those sold by Lubber and to sell Optari's existing inventory of Lubber products, and Lubber and Brazzell agreed to release all claims and causes of action against Pent and Optari.

As this Court pointed out in its prior substantive decision on a request for judgment on the

pleadings, "[t]he Separation Agreement was not the elixir Lubber envisioned" (Docket No. 92 at 3). Quite the contrary, (at least from Plaintiffs' perspective) since the execution of the Separation Agreement, Defendants have engaged in a campaign to confuse and mislead consumers into believing Optari and Lubber are one and the same, that Optari's new totes are the "new and improved" version of the Lubber Tote, and that the original Lubber Tote is no longer available. Additionally, customers have been duped into paying Pent for Lubber products, but Pent has kept those payments for his and/or Optari's use.

The foregoing, of course, is a most rudimentary statement of the facts, but is sufficient to place the parties' arguments in context, and efforts to sort out and distill further undisputed facts are difficult because the parties do not appear to agree on much. What is clear is that the parties are no more neighborly now than they were at the start of this case, and many of their disputes will have to be resolved by a jury.[1]

## A. Conversion – Count X

Defendants move for summary judgment on Plaintiff's conversion claim, citing paragraph 50 of the Amended Complaint which states :

> In late December 2010, Dennis Brazzell was contacted by a customer in England in response to a claim by Lubber as to an outstanding invoice for Lubber products. The customer told Dennis Brazzell that it had already paid the amount owed to Pent. Lubber has never received that payment from Pent, and, upon information and belief, Pent kept the payment and other payments from Lubber customers for customer product and used those payments for his and/or Optari's benefit.

(Docket No. 95 ¶ 50). Defendant argues that this allegation has been proven incorrect because

---

[1] Because Defendants move for summary judgment on all of Plaintiff's claims and rely upon certain defenses, the Court will address the arguments in the order presented by Defendants. In doing so, the Court has fully considered Plaintiff's own motion for summary judgment. As Plaintiff recognizes, however, obtaining summary judgment "is not always an easy feat" for a Plaintiff (Docket No. 204 at 3), and Plaintiff has not established its entitlement to judgment as a matter of law on any of the claims presented.

Plaintiff's sales manager, Todd Smith, testified that the English customer at issue had not paid Optari anything after August 30, 2010, the date of the Separation Agreement.

In its October 6, 2011 ruling, the Court refused to dismiss the conversion claim not only because of the allegations about the English customer, but also because the Verified Complaint "suggested that Defendants may have intercepted Lubber's funds on several occasions." (Docket No. 92 at 17). In response to Defendants' Motion for Summary Judgment, Plaintiff points to what it claims are two such other occasions, both involving an Optari representative e-mailing customers a year after the separation agreement, and requesting payments on past due invoices. In reply, Defendants submitted a Declaration from Pent in which he appears to indicate that those accounts dealt with invoices pre-Separation Agreement that Plaintiff did not fill, one of which was not even paid.

Pent's declaration may establish as a matter of fact that the two accounts identified by Plaintiff involved monies to which Lubber was not entitled. However, the Court cannot make that determination because Pent's declaration was filed after Plaintiff's response brief and the Court does not know Plaintiff's position regarding the declaration. Thus, the Court will deny summary judgment, but the conversion claim may be revisited in the context of a request for directed verdict at the close of Plaintiff's case, if the evidence presented at trial so warrants.

**B.  Specific Performance Regarding Financial Records – Count XI**

Defendants seek summary judgment on Count XI of the Amended Complaint, wherein Plaintiff alleges that "Lubber is entitled to and demands specific performance of Paragraph 12 of the Separation Agreement which provides that, upon request, Defendants must produce to Lubber 'such financial records of Lubber, Inc. transactions as are necessary for Lubber, Inc. to prepare and file

tax returns for the calendar year ending December 31, 2010.'" (Docket No. 94 ¶ 103). Plaintiff argues that summary judgment is inappropriate given that "Defendants' sole basis for dismissal of this claim is their allegation that "Plaintiff . . declared under penalty of perjury that the [2012] return was complete and accurate.'" (Docket No. 236 at 5). Actually, Defendants' argument is broader – they claim that Plaintiff has yet to specify the records it supposedly needs.

The right to specific performance sounds in equity and is within the sound discretion of the trial court. Helton v. Viers, 2003 WL 22462537 at **2-3 (Tenn. Ct. App. Oct. 30, 2003) (collecting cases). "One of the essential elements to be contained in the agreement where specific performance is at issue is an adequate description of the property." Campbell v. Lane, 1992 WL 335947 at *4 (Tenn. App. Ct. Nov. 18, 1992).

Here, the Separation Agreement required that Pent and Optari turn over to Lubber "such financial records of Lubber, Inc. . . . as are necessary for Lubber, Inc. to prepare and file tax returns for the calendar year ending December 31, 2010 and to respond to any inquiry by the Internal Revenue Service with respect to Lubber, Inc." (Docket No. 1-3 at 11). What further records might be necessary to accomplish those tasks is unclear, as Lubber filed its 2010 tax return, and Brazzell signed the return, declaring under the penalty of perjury that it was "true, correct, and complete" to the best of his knowledge and belief. While Pent may have kept "messy" records as Plaintiff claims, the fact remains that no evidence has been presented from which this Court could conclude that Defendant failed to turn over records which would allow Lubber to submit its income tax returns or answer inquiries related thereto. Summary judgment in Defendants' favor will be granted on this claim.

## C. **Claims Regarding Lubbs Mark (Portions of Count IV-VIII)**

In the October 6, 2011 ruling, this Court denied Defendants' request for attorney's fees under the Lanham Act and the TCPA relating to allegations in Counts IV-VIII of the Verified Complaint surrounding the alleged misuse of the LUBB trademark. In doing so, the Court noted that Mrs. Brazzell – not Lubber – was the federal registrant of that trademark and, as such, Lubber lacked standing. Nevertheless, attorney's fees were not warranted because it appeared Plaintiff was abandoning the LUBBS claims in the proposed Amended Complaint, and the reference to LUBBS in Count VIII of that document appeared to be an oversight. Defendants now move for summary judgment on Count IV-VIII insofar as they rest upon alleged wrongful use or infringement of the LUBBS mark.

In response, Lubber argues that even though the Court thought "that the continuing reference to the logo mark LUBBS in Count VII of the Complaint was 'apparently as a result of oversight,' . . . in fact, Lubber intentionally maintained that reference" because, "[w]hile federal trademark registration is required to pursue a claim for trademark infringement under the Lanham Act, Section 1114, such registration is not required to pursue a claim for unfair competition under the Lanham Act, Section 1125, or claims for common-law trademark infringement or unfair competition." (Docket No. 236 at 5, citation to this Court's ruling and footnote omitted). Lubber then argues:

> As Defendants admit, the mark has come to be used and known by Lubber, and Lubber has ownership rights to the LUBBS mark. As Pent acknowledged, as of April 14, 2010, when the exclusive license was granted to Pent and sublicensed to Optari, it was not Ms. Brazzell but Lubber that had the right to grant such use. Indeed, as Pent admits, Ms. Brazzell did not sign that license . . . , yet Pent and Optari operated under the license with the understanding that Lubber had the right to grant an exclusive license to Pent and Optari to use the LUBBS mark. . . Indeed, it is Lubber who has always sold LUBBS and continues to sell LUBBS to this day. . . and Lubber has the right to enforce its rights to the mark under all but the federal trademark infringement claim.

(Id. 236 at 5-6).

Accepting all of the foregoing as true, what Plaintiff does not address is Defendants' position that Plaintiff refused to provide discovery on its LUBBS claim. Indeed, in a series of interrogatories, Plaintiff was asked to produce documents relating to any exchanges between Dennis and/or Suzanne Brazzell and the USPTO concerning the LUBBS trademark, documents showing how Suzanne had used the LUBBS trademark in commerce, and any forms or drafts of agreements between Suzanne Brazzell and Plaintiff concerning use of the LUBBS trademark. In a response dated August 15, 2011, months before this Court's ruling, Plaintiff raised the obligatory objections based upon attorney client privilege and work product doctrine and then stated: "Plaintiff objects to this request as not reasonably calculated to lead to the discovery of admissible evidence, as Plaintiff has *moved to amend its Complaint to omit any claims regarding LUBBS.*" (Docket No. 78-2 at 4-5, emphasis added). Plaintiff confirmed those production requests and its responses in responding to the Statement of Material Undisputed Facts filed in support of Defendant's Motion for Summary Judgment. (Docket No. 243, at 25 ¶ 70).

Obviously, "any claim regarding LUBBS," includes not only federal trademark infringement, but also unfair competition, common law infringement and TCPA claims. Since Plaintiff long ago evidenced an intention to abandon it claims based on LUBBS, since this Court and Defendant were led to that understanding based upon Plaintiff's representations, and since Plaintiff has not shown that complied with discovery requests relating to LUBBS, Count IV-VIII of the Amended Complaint will be dismissed insofar as they are based upon the alleged wrongful use of the LUBBS trademark.

**D.  Request for Declaratory Judgment Terminating Separation Agreement – Count II**

In the October 6, 2011 ruling, the Court found that it would be futile to allow Plaintiff to

amend its complaint to add a rescission claim and, in doing so, wrote:

> . . . Lubber has affirmatively taken actions in accordance with the Settlement Agreement which are inconsistent with its request for rescission . . . If these actions by Lubber do not amount to a "conscious recognition of the contract as binding" and "actions inconsistent with [its] prayer for rescission" . . . the Court is at a loss to understand what would constitute such action.

(Docket No. 92 at 12-13). Relying on that language, and citing cases for the proposition that treating a contract as continuing after a breach deprives the non-breaching party of any excuse for terminating performance, Defendants insist that the request for termination, like the rescission claim, cannot proceed.

"'Rescission as a remedy .. . requires unwinding the entire transaction'" and placing the parties "'in substantially the same condition as they were when the contract was executed, or as near thereto as possible[.]'" GuestHouse Intern. LLC v. Shoney's North America Corp., 330 S.W.3d 166, 107 (Tenn. Ct. App. 2010) (citation omitted). Termination of a contract, on the other hand, does not seek to undo the contract, but to terminate obligations going forward, and the right to terminate a contract and seek rescission are different remedies. See, Facility Wizard Software, Inc. v. Southeastern Tech. Servs. LLC, 647 F. Supp.2d 938, 948 (N. D. Ill. 2009); Manpower, Inc. v. Mason, 377 F.Supp.2d 672, 678-9 & n. 9-10 (E.D. Wis. 2005).

Here, the Separation Agreement states that it is to be governed by Tennessee law, and Tennessee cases which have addressed the right to terminate generally do so in the context of an expressed reservation of that right. See, e.g., Petschonek v. Catholic Diocese of Memphis, 2012 WL 186812 at *9 (Tenn. Ct. App. May 23, 2012) ( "under the contract, Ms. Petschonek also reserved the right to terminate the contract before the end of the contract term"); Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton, 2012 WL 1187981 at *3 (Tenn. Ct. App. April 9, 2012) ("The

Contract allows Loeb Properties 'in its sole discretion' to terminate the Contract; however, this discretion is not unrestrained,"); Cameron Gen'l Contractors, Inc. v. Kingston Pike, LLC, 370 S.W.3d 341, 347 (Tenn. Ct. App. 2011) ("Under the clear and unambiguous terms of the Contract, in the event that Kingston Pike did not complete its site development obligations pursuant to the Contract, Cameron had the option either to terminate the Contract or wait"). The Separation Agreement in this case does not appear to contain an express right to terminate clause, but it does allow Defendants a limited right to sell Plaintiff's remaining product and to market similar items, and there is authority for the proposition that termination of a licensing agreement may be appropriate, even in the absence of an express reservation of that right. See, Dow Chemical Co. v. United States, 226 F.3d 1334, 1346 (Fed. Cir. 2000) (internal citation omitted) ("A material breach, or repudiation, gives rise to a right to exercise a termination provision in a contract . . . and [m]oreover, under the circumstances of this case, the absence of an express termination clause would not ordinarily prevent a party from ending the contract"); Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 10 (1st Cir. 2000) ("Every contract involves a bargained-for exchange of obligations, the material breach of which by one party gives the other party a right to terminate."). Accordingly, Defendants' motion for summary judgment on Plaintiff's request to terminate is denied.[2]

**E. Breach of Contract Claim– Count I**

The parties have filed cross-motions for summary judgment on the breach of contract claim. Stripped to its essence, this dispute centers upon whether Defendants had the right to do what they

---

[2]Plaintiff's related motion for summary judgment on its request for a declaratory judgment terminating Lubber's obligation under the Separation Agreement is also denied, grounded as it is on disputed issues of fact as to whether Defendants failed to uphold their end of the bargain.

did under the terms of the Separation Agreement, and is a matter that is for the jury to determine given the widely divergent portrayal of the relevant facts.

Defendants' motion is grounded on its contention that Plaintiff's contract claim is based upon three alleged breaches of the Separation Agreement – failure to provide financial records, making false statements, and improper use of a website – none of which Plaintiff can establish. Plaintiffs' position is broader and is based upon the proposition that the Separation Agreement (save for the sale of existing Lubber inventory) envisioned a clean separation between Pent and Lubber which Pent and Optari ignored at every opportunity.

"A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." Christenberry v. Tipton, 160 S.W.3d 487, 494 (Tenn. 2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 889-90 (Tenn. 2002).

"Where the language of a contract is clear and unambiguous, its literal meaning controls the outcome of the dispute." Hood v. Jenkins, 2012 WL 4788636 at *7 (Tenn. Ct. App. Oct. 9, 2012). Where the language is ambiguous, however, the intention of the parties is discerned "'not alone from the language of the contract, but also from the surrounding facts and circumstances.'" Id. (quoting, HMF Trust v. Bankers Trust Co., 827 S.W.2d 296, 299 (Tenn. Ct. App. 1991) (quoting, Nat'l Garage Co. v. George H. McFadden & Bro., Inc., 542 S.W.2d 371 (Tenn. Ct. App. 1991)); see, Cummings, Inc. v. Dorgan, 320 S.W.3d 316, 333 (Tenn. Ct. App. 2009) ("When a contract is ambiguous and it is necessary to consider extrinsic evidence to properly interpret the contract, the issue becomes a mixed question of law and fact").

On the one hand, and as Defendants contend, the Separation Agreement can be viewed as

imposing certain specific, limited requirements on Defendants, including that they provide documents to Lubber for purposes of tax preparation and that they transition to Lubber two websites used by Optari. Yet even under this narrow interpretation, question of fact exist as to whether Defendants did as required. For example, Exhibit A to the Separation Agreement indicates that the domain names lubberus.com and lubberinc.com were to be held in escrow until October 31, 2010, and Plaintiff insists that Defendants continued using those websites "without pause" during the escrow period to send and receive emails, and placed on the lubberus.com the message "Please reset your browser and bookmark to: Optari.com" (Docket No. 236 at 9-10). Whether this occurred, and whether it violated the Separation Agreement, is for the jury to determine. See, Forrest Const. Co., LLC v. Laughlin, 337 S.W.3d 211, 224 -225 (Tenn. Ct. App. 2009) ("Whether a party has fulfilled its obligations under a contract or is in breach of the contract is a question of fact.").

On the other hand, and as Plaintiff contends, the Separation Agreement can be read more broadly as intending (with limited exceptions) a complete separation of the parties going forward. If so, there are a host of factual disputes about whether Defendants used the Lubber brand above and beyond its right to sell existing inventory.

In concluding that summary judgment is not appropriate on the breach of contract claim, the Court has considered Defendants' argument that Plaintiff committed the first material breach by representing and warranting that a complaint had not been previously lodged against Defendants with any law enforcement agency concerning matters released in the Settlement Agreement.

A party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract." White v. Empire Exp., Inc., 2012 WL 4497820 at *16 (Tenn. Ct. App. 2012). However, "[t]he determination whether a material breach

has occurred is generally a question of fact answered by weighing the consequences of the breach," Hodak v. Madison Capital Mgmt., Inc., 348 Fed. Appx. 83, 90 (6th Cir. 2009), and so it is in this case.

Plaintiff points to evidence it contends shows that Pent knew at the time the Separation Agreement was signed that Brazzell had charged him with embezzlement. The cited evidence, however, is far from compelling and only obliquely supports Plaintiff's contention. Nevertheless, Defendants rely upon Pent's self-serving declaration that he would not have signed the Separation Agreement as written and would have "insisted on modification" had he known of the breach. His state of mind and his credibility on the issue of materiality is a question for the jury. See, Jack Henry & Assoc. Inc. v. BSC, Inc., 487 Fed. Appx. 246, 254 (6th Cir. 2012) (citation omitted) ("Whether a breach is material . . . is a question of fact for the jury.").

## F. Trademark, Unfair Competition, TCPA and Interference Claims – Counts IV-IX

The parties have cross-moved for summary judgment on Plaintiff's non-breach of contract claims, with Defendants arguing that what Plaintiff is really complaining about is alleged false advertising, a claim which it has not pled, nor can it prove. Having fully considered the arguments raised by the parties, the Court finds that, while Plaintiff is not entitled to judgment as a matter of law, it has raised sufficient disputed facts to present its trademark, unfair competition, TCPA[3] and interference claims to a jury.

"[T]rademark infringement claims and unfair competition claims" are generally resolved

---

[3] The TCPA prohibits "'[d]isparaging the goods, services or business of another by false or misleading representations of fact,'" Tenn. Code Ann. § 47–18–104(b)(8) (2007), and this is Tennessee's state law equivalent of a Lanham Act claim. Rymed Tech. Inc. v. ICU Med. Inc., 2012 WL 4504896 at *10 n. 6 (M.D. Tenn. Sept. 28, 2012) (quoting, Medison America, Inc. v. Preferred Medical Systems, LLC, 548 F.Supp.2d 567, 585 (W.D. Tenn.2007)).

"'on the central issue of likelihood of confusion.'" Georgia-Pacific Consumer Prod. LP v. Four-U-Packaging, Inc., 701 F.3d 1093, 1100 (6th Cir. 2012) (quoting, Gen. Motors Corp. v. Keystone Auto. Indus., Inc., 4534 F.3d 351, 354 (6th Cir. 2006). An eight-factor test is used to determine the likelihood of confusion: "1. strength of the plaintiff's mark; 2. relatedness of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. likely degree of purchaser care; 7. defendant's intent in selecting the mark; [and] 8. likelihood of expansion of the product lines." Id. at 1100-01. "Given the open-ended nature of this multi-prong inquiry, it is not surprising that summary judgment on 'likelihood of confusion' grounds is generally disfavored." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1210 (9th Cir. 2012) (discussing virtually identical eight factors used by the Ninth Circuit); Keystone Auto., 453 F.3d at 359 ("These genuine disputes of material fact render summary judgment inappropriate, a common disposition in evaluating likelihood of confusion"); Schneider Saddlery Co. Inc. v. Best Shot Pet Prod. Inc., 2009 WL 864072 at 3 (N.D. Ohio Mar. 31, 2009) (collecting cases for the proposition that deciding trademark cases on summary judgment is disfavored).

In this case, Plaintiff's non-contract claims are necessarily tied to the contract claim because the Separation Agreement allowed Defendants the limited right to sell off existing Lubber products and to develop a competing product. See, Brennan's Inc. v. Dickie Brennan & Co. Inc., 376 F.3d 356, 365 (5th Cir. 2004) (collecting cases) ("the prevailing view is that one who exceeds the scope of the license is potentially liable not just for breach of the license agreement but also for trademark infringement."); ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical Therapy P.C., 314 F.3d 69 (2nd Cir. 2002) ("While a plaintiff may acquiesce in some uses of the mark and in any resulting likelihood of consumer confusion, [but] [b]y using the mark in a different

manner. . ., a defendant may exceed the scope of the plaintiff's consent and be exposed to liability for that extra-consensual use.).

A jury could find that Defendant was not authorized to suggest that Lubber and Optari were one and the same, or produce an identical tote and label it "new and improved," but in fact did so. A jury could also accept Plaintiff's related assertions that, after August 30, 2010, Defendants interchangeably used Sol Tote and Lubber Tote and referred to Optari as the former Lubber, evidence that could be particularly compelling to a jury in light of the parties' past affiliation and their agreement to go their separate ways. Yet the very same jury may be convinced that any confusion was caused by the Separation Agreement and/or that Defendants took monumental steps to distinguish themselves, including, but not limited to, choosing a distinct corporate name, creating a "new product" called Sol Tote, selling charms with the distinctive name "Fobbs," and sending emails disclaiming any affiliation between Lubbers and Optari.

Neither party has established that there are no genuine issues of material fact on the non-contract claims, and, therefore, summary judgment is inappropriate.

## G.  Trade Dress Claim – Portions of Counts IV, VI and VII

Defendants assert that because Brazzell testified in his deposition that Plaintiff stopped using hang cards and did not intend to use its old design, Plaintiff has abandoned its trade dress claim as a matter of law. However, both in response to Defendants' Statement of Facts, and in opposition to Defendants' Motion for Leave to Assert Defense of Abandonment (filed the same day as its Motion for Summary Judgment), Plaintiff contends that its trade dress claim is not limited to the hang card, as the distinctive multi-colored polka-dot pattern is used in connection with its products generally, appears on its website, and is used in flyers.

"[I]n order for a party to succeed on a claim of abandonment, it must prove the elements of both non-use and intent, *i.e.*, that the other party actually abandoned its mark through non-use and that it intended to do so." Stilson & Assoc. v. Stilson Consulting Group, LLC, 129 Fed. Appx. 993, 995 (6th Cir. May 6, 2005) (citation omitted). Further, "[b]ecause a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that defendants asserting an abandonment defense face a 'stringent,' 'heavy,' or 'strict burden of proof.' Id. (citing, Cumulus Media, Inc. v. Clear Channel Comm., Inc., 304 F.3d 1167, 1175 (11th Cir. 2002). Defendants have not met this heavy burden here, where the parties do not even agree on what constitutes the trade dress claim.

## H.  False Patent Marking (Count XIII)

Plaintiff sues Defendants for false patent marking because a patent was not pending for the Sol Tote until March 2011, but Defendants began selling products with that designation in October 2010. To prevail on this claim, Plaintiff must show that Defendants (1) marked "patent pending" on a product when no application for patent had been made (2) for the purpose of deceiving the public and, in doing so, (3) caused a competitive injury. 35 U.S.C. § 292.[4] Defendants move for summary judgment, arguing Plaintiff cannot establish the last two elements. While the Court finds that issues of material fact exist on the intent to deceive element, the Court finds that Plaintiff has not established the competitive injury element.[5]

---

[4] The America Invents Act which became law on September 16, 2011, added the third element. The Act is retroactive and applies to all pending cases. Hall v. Bed Bath & Beyond, Inc.,705 F.3d 1357, 1373 (Fed. Cir. 2013).

[5] Plaintiff cross-moves for summary judgment on this claim. In light of this Court's conclusion that Defendants are entitled to summary judgment because Plaintiff has not shown "competitive injury," Plaintiff's own request for summary judgment is denied.

With regard to the second element, the Federal Circuit has stated that "[i]ntent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." Clontech Labs. Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005). As the Federal Circuit went on to explain:

> Intent to deceive, while subjective in nature, is established in law by objective criteria. . . Thus, "objective standards" control and "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent". . . . Thus, under such circumstances, the mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability. Such an assertion, standing alone, is worthless as proof of no intent to deceive where there is knowledge of falsehood. But in order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent). Absent such proof of lack of reasonable belief, no liability under the statute ensues.

(Id. at 1352-53, citation omitted).

Ultimately, "[t]he question of whether conduct rises to the level of statutory deception is a question of fact," id. at 1353, and it may be that Defendants did not intend to deceive as "the patent was sought reasonably promptly considering the need for legal assistance and the fact that Pent was spending much of his time establish his business." (Docket No. 189 at 17). It may equally be, however, that the premature marking "was part and parcel of Defendants' campaign to deceive consumers that Optari had its own patent pending on its Sol Tote for purposes of advancing their unfair vompetition with Lubber" (Docket No. 236 at 24) as Plaintiff claims.

With regard to the third element, Defendants assert that Plaintiff cannot show competitive

injury,[6] and claim that Plaintiff continued "without abatement" to market and sell its Lubber totes. In response, Plaintiff argues that there is a general presumption of competitive injury, and cites for that proposition two cases – <u>RB Rubber Products, Inc. v. ECore Int'l Inc.</u>, 2012 WL 4068557 (D. Ore. Sept 14, 2012) and <u>IRA Green, Inc. v. J.L. Darling Corp.</u>, 2011 WL 628146 (W.D. Wash. 2011) – both of which are inapposite because they were decided in the context of motions to dismiss.

Moreover, after addressing the issue on a motion to dismiss, the court in <u>IRA Green</u> revisited the false marking claim in the context of a motion for summary judgment.  In discussing the competitive injury element under 35 U.S.C. § 292, the court wrote:

> Competitive injury is more difficult to define.  As the parties point out, Congress amended 35 U.S.C. § 292(b) in September of 2011 in order to create a private cause of action only when a competitive injury can be asserted.  <u>Rogers v. Tristar Products,</u> Inc., 2012 WL 1660604, at *3 (Fed. Cir. May 2, 2012). The purpose of the amendment is to limit abusive litigation and to permit those who have actually suffered a competitive injury to "be compensated. <u>Id</u>. (citing 157 Cong. Rec. S5319–03 at S5320 (Sen. Kyl)).  Congress did not define competitive injury and the Federal Circuit has yet to rule on this new amendment. The District Court for the Central District of California, however, has ruled on the level of proof required to show competitive injury.  <u>U.S. Rubber Recycling, Inc. v. ECORE Int'l</u>, 2011 U.S. Dist. LEXIS 154151 (C.D. Cal. Dec. 12, 2011). "It is Plaintiff's burden to come forward with evidence that Defendant's false marking was actually the cause of its lost sales." <u>Id</u>. at * 14. Causation and proof of lost sales, loss of reputation or goodwill, or inability to freely market or price products are required to survive summary judgment.  <u>Id</u>.

<u>Ira Green, Inc. v. J.L Darling, Corp.</u>, 2012 WL 4793005 at *10 (W.D. Wash. 2012).  Applying that law to the facts before it, the court then wrote:

> As noted above, there are contested facts regarding whether the '940 patent marking placement was false, whether Darling knew it was false, and whether Darling acted in good faith. However, Green has not presented an issue of fact regarding competitive injury.  Green has presented no facts showing loss of sales, goodwill or

---

[6] Defendant also asserts that Plaintiffs did not plead competitive injury.  However, the Amended Complaint was drafted before the America Invents Act and, as drafted, sets forth the essential elements of a pre-amendment claim under 35 U.S.C. § 292.

ability to market that was *caused* by Darling placing its '940 patent marking on the back of the notebook covers rather than on the individual RITR sheets. This causation is a necessary element of the recent amendments to 35 U.S.C. § 292. Therefore, summary judgment should be granted for Darling on Green's false patent marking claim (Count I).

Id. (emphasis in original).

Likewise in this case, while there are contested issues of fact regarding whether Defendants intended to deceive by prematurely marking items "patent pending," Plaintiff has not shown a loss of sales, goodwill or inability to market caused by that misconduct. All Plaintiff argues is that "Lubber is all but a dead brand" now, and relies on Lubber Deposition, Exhibit 74, for that proposition.

Exhibit 74 consists of profit and loss statement for the years 2009-2012. Even though the statement for 2012 indicates abysmal sales, the sales for 2010 and 2011 (encompassing the short period that Defendants wrongly used the patent pending mark) were three and one-half to four times what they were in 2009. This hardly shows that the "patent pending" mark caused competitive injury. See, Pharmanetics, Inc. v. Aventis Pharm., Inc. , 182 Fed. Appx. 267, 273 (4th Cir. 2006) (emphasis in original) (even assuming that presumed damages applied to Lanham Act claim, "plaintiff must still prove the harm's financial extent" and the "*extent of the money damages*"). Accordingly, summary judgment will be granted in Defendants' favor on the false marking claim.

## I. Judicial Estoppel for Damages Arising Prior to October 4, 2010

Defendants seeks to bar any recovery for damages prior to October 4, 2010, the date Brazzell filed bankruptcy, on judicial estoppel grounds. In doing so, Defendants rely on the following excerpt from Brazzell's February 24, 20012 Rule 2004 Examination:

U.S. Trustee Attorney: So in your lawsuit, you are not seeking compensation and Lubber is not seeking compensation for anything that occurred prior to your

18

bankruptcy case being filed?

Dennis Brazzell: No. But what she is trying to do is recover the damages that he done since we found that he was using my company's name to sell his product -- knock off product of mine . . .

Chapter 7 Trustee: But I wasn't clear. Are -- is she also evaluating and are you looking to recover any type of monies for anything that would have happened pre-petition?

Dennis Brazzell: No, I don't know how I could, I wish I could .. .

(Docket No. 289 at 18).

"The principle behind judicial estoppel is basic and longstanding: 'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.'" <u>Watkins v. Bailey</u> 484 Fed. Appx. 18, 25 (6th Cir. 2012) (quoting, <u>Davis v. Wakelee</u>, 156 U.S. 680, 689 (1895)). "An equitable doctrine, it may be invoked at the court's discretion to 'prevent[ ] parties from playing fast and loose with the courts.'" <u>Id</u>. (quoting, <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750 (2001)). "Judicial estoppel, however, should be applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.'" <u>Eubanks v. CBSK Finan. Group, Inc.</u>, 385 F.3d 894, 897 (6th Cir. 2004).

In the context of proceeding before a bankruptcy court, the Sixth Circuit has stated that to "support a finding of judicial estoppel," the court "must find that: (1) [plaintiff] assumed a position that was contrary to the one that [he] asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [plaintiff's] omission did not result from mistake or inadvertence." <u>White v. Wyndham Vacation Ownership, Inc.</u>, 617 F.3d 472, 478 (6th Cir. 2010). With respect to the last

element, the Sixth Circuit has further stated that, in determining whether the conduct resulted from mistake or inadvertence, a "court considers whether: (1) [he] lacked knowledge of the factual basis of the undisclosed claims; (2) [he] had a motive for concealment; and (3) the evidence indicates an absence of bad faith." Id.

Based upon the summary judgment record, the Court cannot say that Brazzell is playing fast and loose with the court, or engaging in "cynical gamesmanship," Eubanks, 385 F.3d at 897, particularly since the Bankruptcy Trustee had full knowledge of the existence of this case. All Defendants have presented the Court are excerpts from the Rule 2004 Examination, but the quoted excerpts are not consecutive questions and answers, and even the quoted portions suggest a modicum of confusion by the Chapter 7 Trustee in relation to Brazzell's answers, specifically Brazzell's claim that Lubber was not trying to recover damages for the time from when Lubber found out that Pent was using Lubber's name to sell knock-off products. When pressed, Brazzell stated that Lubber was not seeking money pre-petition, but then qualified that somewhat by stating that he wished Lubber could recover such damages, but did not know how that could occur. At best, this raises the issue of whether Brazzell was in a position to opine about the nature and extent of Lubbers' claims, not only because Brazzell (not Lubber) filed bankruptcy, but also because the Trustee was aware of this litigation and most certainly could have inquired into the precise nature of the claim from other sources, including Brazzell's litigation counsel.

Nor have Defendants established as a fact that the Trustee relied on Brazzell's statements. While the Trustee ultimately filed a Report of No Distribution, it is speculation to assume that determination was based upon Brazzell's cited statements, rather than the Trustee's own examinations of the pleadings in this case. Accordingly, Defendants are not entitled to summary

judgment that would preclude pre-petition damages on the basis of judicial estoppel.

## J.  Entitlement to Remedies

In response to Defendants' request for summary judgment asserting that Plaintiff is not entitled to the remedies it seeks as a matter of law, *i.e.* lost profits and disgorgement, Plaintiff states that "Lubber has chosen to forego attempting to prove lost profits and has sought to use Defendants' profits as the measure of Lubber's damages." (Docket No. 236 at 30).  In reply, Defendants argue that the disgorgement claim fails as a matter of law because "[d]isgorgement requires 'something more,' typically intentional or improper behavior and harm to the plaintiff or gain by the defendant." (Docket No. 283 at 2).

"A prevailing plaintiff in a trademark infringement case may, under certain circumstances, recover a defendant's profits subject to the principles of equity."  Laukus v. Rio Brands, Inc., 391 Fed. Appx. 416, 423 (6th Cir. 2010).   In infringement cases, the Sixth Circuit has "previously recognized that an award of profits may be warranted under various rationales, such as unjust enrichment, deterrence, and compensation."  Id. at 424.  "Although showing willfulness is not required, willfulness is one element that courts may consider in weighing the equities."  Id.

Defendants maintain that the equities do not favor disgorgement, arguing that (1) Plaintiff acted with "unclean hands," (2) Defendant's did not wilfully infringe any mark, and (3) Defendants were not unjustly enriched because they paid $100,000 as part of the Separation Agreement.  Summary judgment is inappropriate because these assertion themselves are based upon facts (and the inferences to be drawn from those facts) that are in dispute and which must be viewed in the light most favorable to Plaintiff for purposes of Defendants' motion.

## K.  Doctrine of Unclean Hands

Defendants seek to bar recovery by Plaintiff under the doctrine of unclean hands. That doctrine "provides that 'he who comes into Equity must come with clean hands.'" Emmit v. Emmit, 174 S.W.3d 248, 252 (Tenn. Ct. App. 2005) (quoting, Heyland Sales Co. v. Welding Gas Products Co., 180 Tenn. 437, 175 S.W.2d 557, 561 (1943)). The doctrine "enables a court to prevent a party from profiting from her own misconduct," id., and provides that "he who seeks equity must do equity and that he who has done inequity cannot have equity." In re: Estate of Boote, 265 S.W.3d 402, 417–18 (Tenn. Ct. App. 2007) (citing McCallie v. McCallie, 719 S.W.2d 150, 154 (Tenn. Ct. App. 1986)).

That said, "[d]ecisions regarding the proper application of the doctrine of unclean hands are heavily fact-dependent and are addressed to the considerable discretion of the trial court." Id. "Accordingly, credibility determinations can be pivotal, and the trial court is in the best position to make these determinations because it has the opportunity to view the witnesses as they are testifying." Id.

Here, Defendants set forth a laundry list of alleged "facts" which they claim show "a pattern of malicious inequitable and fraudulent conduct" direct at Defendants. But a host of misconduct claims are also leveled by Plaintiff and "[o]ne factor that should weigh in the court's exercise of its discretion is whether the person who is pointing to the unclean hands of an opponent also has unclean hands." Senior Housing Alternatives, Inc. v. Bernard Global Loan Investors, Inc., 2011 WL 22553260 *13 (Tenn. Ct. App. June 28, 2011). In spite of the sentimental hygiene arguments made with regard to the hands of all concerned, summary judgment is inappropriate on the record presented and, accordingly, Defendant's motion for summary judgment will be denied.

## II. CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for Summary Judgment on the issue of liability will be denied, while Defendants' Motion for Summary Judgment will be granted in part and denied in part. The motion will be granted with respect to Plaintiff's request for specific performance regarding financial records, all claims based upon the LUBBS mark, and the false patent marking claim. In all other respects, Defendants' motion will be denied.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE